# EXHIBIT C



# A Guide To Your General Liability Policy

The following is a guide to your General Liability policy. We have identified several key coverage items along with the limits and deductibles you have selected. To make it easier, we have also added a brief explanation of those items.

We want you to feel confident about your new policy. If any of the information below is incorrect or if you have any questions, please contact one of our advisors at 844-357-0840 (Mon-Fri, 7am-10pm ET) or manage your policy at: www.hiscox.com/manage-your-policy.

| Your business details | |
|---|---|
| **Name:** | Madison Rosa |
| **Business Name:** | Safe Rise |
| **Address:** | 1153 Udall Road |
| **City:** | Bay Shore |
| **State:** | NY |
| **Zip code:** | 11706 |
| **Occupation:** | Training (business, vocational or life skills) |
| **Telephone number:** | 347-815-3725 |
| **Email address:** | saferisenyc@gmail.com |

| Your General Liability Policy | |
|---|---|
| **Policy number:** | P100.082.979.4 |
| **Policy effective dates:**<br>This determines the time period during which your coverage applies. | From: February 3, 2024<br>To: February 3, 2025 |
| **Form of business:**<br>This identifies the legal structure of your business and determines who is insured under your policy. | Other |
| **Business Property and Equipment Coverage:** | Rejected |
| **Optional terrorism coverage:** | Included |
| **Total cost of policy:** | ▆▆▆▆ |

| Your coverage and limits | |
|---|---|
| **Each occurrence limit**<br>The most we will pay for all damages due to bodily injury and property damage, and medical expenses that arise out of any one occurrence. Defense costs we incur, in the defense of a lawsuit filed against you, will not reduce this limit. | $ 1,000,000 |

| | |
|---|---|
| **General aggregate limit**<br>The most we will pay for all damages and medical expenses for the entire policy. Defense costs we incur, in the defense of a lawsuit filed against you, will not reduce this limit. | $ 2,000,000 |
| **Medical expenses**<br>The most we will pay for all medical expenses sustained by any one person. | $ 5,000 any one person |
| **Deductible for General Liability Coverage**<br>However, a $1,000 per occurrence deductible does apply to properties managed by you, premises listed by you or shown by you for sale or rental. | No deductible |

## Other policy information

**Notice of claim**
If you have a claim, please call us at 866-424-8508. You may also e-mail us at reportaclaim@hiscox.com

**What does my General Liability Policy cover?**
For a summary showing examples of what you are and are not covered for, please read the Coverage Summary document.

This guide does not modify the terms and conditions of your policy, which are contained in your policy documents, nor does it imply any claim is covered or not covered. We recommend that you read your policy documents to learn the details of your coverage.



**Reinventing Small Business Insurance®**

# General Liability Coverage Summary

We want you to understand the Hiscox General Liability coverage. This summary explains the main areas of coverage and exclusions.

If you have any questions about your coverage, please contact one of our advisors at 844-357-0840 (Mon-Fri, 7am-10pm ET). Or, you can **manage your policy** by visiting https://www.hiscox.com/manage-your-policy.

## ☑ This policy does cover

**Bodily injury or property damage**
To the extent you are legally liable, we cover damages or claims expenses if you injure a third-party or damage someone's property. However, damage to premises you rent is only covered if caused by fire or if the premises is rented to you for a period of 7 or fewer consecutive days.

**Medical payments**
We will make medical payments as a result of bodily injury that occurs in the course of your business operations, regardless of fault.

**Defense costs**
If you're sued, even if you're not at fault, we will appoint an attorney to defend you, even if the lawsuit is groundless. We will pay these defense costs on your behalf.

**Personal and advertising injury**
We cover claims of libel and slander that are not part of your professional services. We also protect you if your advertisement unintentionally uses a third party's advertising idea or infringes upon another's copyright. We do not provide this coverage to marketing or PR professionals, research consultants, graphic designers, lawyers, recruiters, real estate agents/brokers or property managers.

**Electronic data liability**
Specifically added for consultants and technology service providers, Hiscox covers your liability for damage to someone's electronic data resulting from the physical damage of property. We provide up to $25,000 of coverage.

**Worldwide insurance coverage**
We cover damage that occurs in the United States, its territories and Canada. We also offer some coverage for instances outside these areas while you're away on short periods of travel.

**Employees or temporary staff**
Hiscox will cover claims arising from your employees' or temporary staff's actions if they were performed on behalf of your business.

**Supplemental payments**
Your Hiscox policy covers the following expenses, should they be incurred, without reducing your limit of liability:
- All expenses we incur, including the defense of lawsuits
- Up to $250 a day for reasonable expenses (including loss of earnings) you incur as a result of assisting us in the defense of a claim or lawsuit
- Interest on damage awards

## ☒ This policy does not cover

**Intent to injure**
We won't cover you for any act that occurs with the intent to injure. This includes personal and advertising injuries if you knew your actions were false or violated the rights of others.

**Outside the policy period**
We won't cover claims for bodily injury, property damage, or personal and advertising injury that do not occur during the policy period.

**Known claims and circumstances**
We won't cover your business for any claim or circumstance that could result in a claim you knew about prior to the start of your first Hiscox policy.

**Personally identifiable information**
We won't cover your failure to protect any personally identifiable information that is in your care.

**Professional services**
We won't cover any professional services performed by you. These types of risks may be covered as part of our Professional Liability Policy.

**Vehicles and boats**
We won't cover any claims arising out of the ownership or use of an automobile or a watercraft.

**Workers' compensation**
We won't cover any obligation you may have under a workers' compensation claim or similar law.

**Your property**
We won't cover claims for damage to property you own or have in your care. However, protection for your own business equipment can be purchased as part of our Business Owners Policy.

**Personal and advertising injury**
We don't provide this coverage to marketing or PR professionals, research consultants, graphic designers, lawyers, recruiters, real estate agents/brokers or property managers. However, this coverage is available as part of our Professional Liability Policy.

## Common claims examples

**Bodily injury** — A client falls over your bag and you are legally liable for the injury. We will cover the subsequent claim and related medical expenses up to your limits of liability.

**Property damage and data loss** — You spill coffee on a client's server causing damage and loss of data. We will cover the subsequent claim up to your limits of liability.

**Personal injury** — One of your employees is at lunch. He talks to the owner of the shop about one of your clients in a false and unflattering way. The client learns of this discussion and sues for slander. We will cover the subsequent claim, up to your limits of liability, and pay for an attorney to defend you if necessary.

Coverage summaries, descriptions, and claims examples are provided for illustrative purposes only and are subject to the applicable policy limits, deductibles, exclusions, terms, and conditions. Not all insurance products and services are available in all states. Hiscox recommends you read the policy documents to learn the full details of coverage.

Underwritten by Hiscox Insurance Company Inc., 104 South Michigan Avenue, Suite 600, Chicago, IL 60603, as administered by Hiscox Inc., a licensed insurance provider in all states and DC.



# Declarations Page



**HISCOX INSURANCE COMPANY INC. (A Stock Company)**

104 South Michigan Avenue, Suite 600, Chicago, Illinois 60603

# Commercial General Liability Declarations

**In return for the payment of the premium, and subject to all the terms of this Policy, we agree with you to provide the insurance as stated in this Policy.**

| | |
|---|---|
| Declaration effective from: | February 3, 2024 |
| Policy No.: | P100.082.979.4 |
| Renewal of: | P100.082.979.3 |
| Named Insured: | Safe Rise |
| Address: | 1153 Udall Road<br>Bay Shore, NY 11706 |
| Email Address: | saferisenyc@gmail.com |

Policy period:  From: February 3, 2024  To: February 3, 2025

At 12:01 A.M. (Standard Time) at the address shown above.

| | |
|---|---|
| Form of Business: | Other |
| Each Occurrence Limit: | $1,000,000 |
|     Damage to Premises Rented to You Limit: | $100,000     Any one premises |
|     Medical Expense Limit: | $5,000     Any one person |
| Personal & Advertising Injury Limit: | $1,000,000     Any one person or organization |
| General Aggregate Limit: | $2,000,000 |
| Products/Completed Operations Aggregate Limit: | Products-completed operations are subject to the General Aggregate Limit |
| Supplemental Business Personal Property Floater Coverage Limit: | $0 |
| Supplemental Business Personal Property Floater Coverage Deductible: | Not Applicable |

All Premises You Own, Rent or Occupy

| | |
|---|---|
|     Premises Number: | 1 |
|     Address: | 1153 Udall Road<br>Bay Shore, NY 11706 |
| **Total Premium:** | ████ |
| **Attachments:** | See attached Forms and Endorsements Schedule. |



## HISCOX INSURANCE COMPANY INC. (A Stock Company)
104 South Michigan Avenue, Suite 600, Chicago, Illinois 60603

IN WITNESS WHEREOF, the Insurer indicated above has caused this Policy to be signed by its President and Secretary, but this Policy shall not be effective unless also signed by the Insurer's duly authorized representative.

President

Secretary

Authorized Representative

# Forms and Endorsements Schedule

Forms and Endorsements made part of this policy at time of issue:

CGL D001 10 18 - Commercial General Liability Declarations
INT D001 01 10 - Forms and Endorsements Schedule
CG 00 01 12 07 - General Liability Coverage Form
CGL E5401 CW (03/10) - Definition of Employee
CGL E5404 CW (03/10) - Exclusion - Personal Information
CGL E5407 CW (03/10) - Exclusion - Professional Services
CGL E5408 CW (03/10) - Cancellation Provision (14 Day Full Refund)
CGL E5409 CW (03/10) - Right and Duty to Select Defense Counsel
CGL E5413 NY (08/10) - Notice Information New York
CGL E5421 CW (02/14) - Additional Insured - Automatic Status
IL 00 17 11 98 - Common Policy Conditions
IL 00 23 07 02 - Nuclear Energy Liability Exclusion Endorsement (Broad Form)
CG 00 68 05 09 - Recording and Distribution of Material or Information in Violation of Law Exclusion
CG 21 41 11 85 - Exclusion - Intercompany Products Suits
CGL E2221 CW (03/21) - Exclusion - Privacy and Cyber Incidents
CG 26 21 10 91 - New York Changes - Transfer of Duties When a Limit of Insurance is Used Up
CG 01 04 12 04 - New York Changes - Premium Audit
CG 01 63 04 09 - New York Changes - Commercial General Liability Coverage Form
IL 02 68 08 08 - New York Changes - Cancellation and Nonrenewal
CGL E5405 CW (03/10) - Exclusion - Damage to Primary Residence
IL 09 85 12 20 - Disclosure Pursuant To Terrorism Risk Insurance Act
CG 21 70 01 15 - Cap On Losses From Certified Acts Of Terrorism
CG 21 32 05 09 - Communicable Disease Exclusion
CGL E2227 CW (03/23) - Amended War Exclusion
INT N003 CW (01/19) - Policyholder Notice Electronic Delivery
INT N001 CW (01/09) - Economic And Trade Sanctions Policyholder Notice



# Policy Wording


# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

**(b)** the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

 © ISO Properties, Inc., 2006 ☐

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Distribution Of Material In Violation Of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of websites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Distribution Of Material In Violation Of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**COVERAGE C MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

## 2. Exclusions

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

© ISO Properties, Inc., 2006

☐

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

    **(1)** With respect to liability arising out of the maintenance or use of that property; and

    **(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C;**

**b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B.**

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage **A;** and

**b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

    **(1)** How, when and where the "occurrence" or offense took place;

    **(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

© ISO Properties, Inc., 2006         □

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

 © ISO Properties, Inc., 2006 □

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (1) Power cranes, shovels, loaders, diggers or drills; or

      (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      (2) Cherry pickers and similar devices used to raise or lower workers;

   f. Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   (1) Equipment designed primarily for:

      (a) Snow removal;

      (b) Road maintenance, but not construction or resurfacing; or

      (c) Street cleaning;

   (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

   f. The use of another's advertising idea in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

**(2)** The providing of or failure to provide warnings or instructions.

© ISO Properties, Inc., 2006 ☐



# Endorsements



**Hiscox Insurance Company Inc.**

Policy Number: P100.082.979.4
Named Insured: Safe Rise
Endorsement Number: 1
Endorsement Effective: 02/03/2024

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# DEFINITION OF EMPLOYEE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

In **Section V – DEFINITIONS**, Definition 5. "Employee" is deleted and replaced with the following:

5.  "Employee" includes a "leased worker" and a "temporary worker".

Includes copyrighted material of Insurance Services Office, Inc., with its permission.



**Hiscox Insurance Company Inc.**

Policy Number: P100.082.979.4
Named Insured: Safe Rise
Endorsement Number: 2
Endorsement Effective: 02/03/2024

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – PERSONAL INFORMATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **2. Exclusions**  under **Section I – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**,  and **COVERAGE C – MEDICAL PAYMENTS**  is amended to include the following exclusion:

**Personal Information**
"Bodily injury", "property damage" or "personal and advertising injury" caused by the insured's failure to protect any non-public, personally identifiable information in the insured's care, custody or control.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.



**Hiscox Insurance Company Inc.**

Policy Number:       P100.082.979.4
Named Insured:      Safe Rise
Endorsement Number:   3
Endorsement Effective:  02/03/2024

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – PROFESSIONAL SERVICES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **2. Exclusions** under **Section I – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, and **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**, is amended to include the following exclusion:

**Professional Services**
"Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service.

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render any professional service.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.



**Hiscox Insurance Company Inc.**

Policy Number: P100.082.979.4
Named Insured: Safe Rise
Endorsement Number: 4
Endorsement Effective: 02/03/2024

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CANCELLATION PROVISION
# (14 DAY FULL REFUND)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

All Coverage Parts included in this policy are subject to the following condition:

Notwithstanding anything in the "**COMMON POLICY CONDITIONS**" or any other cancellation provision to the contrary, if the first Named Insured cancels within 14 days of the inception of the policy period shown in the Declarations without there having been: (i) an "occurrence" that caused "bodily injury" or "property damage"; (ii) an offense arising out of your business that caused a "personal and advertising injury"; or (iii) an accident that caused "bodily injury"; then we shall return in full any premium amount actually paid to us. In such event, the effective date of cancellation shall be deemed to be the inception date of the policy period shown in the Declarations.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.



**Hiscox Insurance Company Inc.**

Policy Number:      P100.082.979.4
Named Insured:      Safe Rise
Endorsement Number:   5
Endorsement Effective:   02/03/2024

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# RIGHT AND DUTY TO SELECT DEFENSE COUNSEL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

In regard to any covered "suit" seeking damages under **Section I – COVERAGE A – BODILY IN-JURY AND PROPERTY DAMAGE LIABILITY** or **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**, our right and duty to defend shall include the right to select defense counsel.



**Hiscox Insurance Company Inc.**

Policy Number: P100.082.979.4
Named Insured: Safe Rise
Endorsement Number: 6
Endorsement Effective: 02/03/2024

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NOTICE INFORMATION
# NEW YORK

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Where To Send Notice |
| --- |
| Phone: 866-424-8508<br>Email: reportaclaim@hiscox.com<br>Mail: Hiscox<br>5 Concourse Parkway, Suite 2150<br>Attn: Direct Claims<br>Atlanta GA, 30328 |

Subparagraph **2. Duties In The Event Of Occurrence, Offense, Claim Or Suit** in **Section IV – COMMERCIAL GENERAL LIABILITY CONDITIONS** is amended to include the following:

Any notification required by this policy may also be provided to us at the address listed in the above **SCHEDULE**.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.





**Hiscox Insurance Company Inc.**

Policy Number: P100.082.979.4
Named Insured: Safe Rise
Endorsement Number: 7
Endorsement Effective: 02/03/2024

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – AUTOMATIC STATUS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. **Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) for whom you are performing operations or leasing a premises when you and such person(s) or organization(s) have agreed in writing in a contract or agreement that such person(s) or organization(s) be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

1. In the performance of your ongoing operations; or

2. In connection with your premises owned by or rented to you.

A person's or organization's status as an additional insured under this endorsement ends when your operations or lease agreement for that additional insured are completed.



**Hiscox Insurance Company Inc.**

Policy Number: P100.082.979.4
Named Insured: Safe Rise
Endorsement Number: 8
Endorsement Effective: 02/03/2024

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   **a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   **a.** Make inspections and surveys at any time;

   **b.** Give you reports on the conditions we find; and

   **c.** Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   **a.** Are safe or healthful; or

   **b.** Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1982, 1983



**Hiscox Insurance Company Inc.**

Policy Number: P100.082.979.4
Named Insured: Safe Rise
Endorsement Number: 9
Endorsement Effective: 02/03/2024

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**1.** The insurance does not apply:

   **A.** Under any Liability Coverage, to "bodily injury" or "property damage":

   **(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   **B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   **C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

   **(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

   **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

   **(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

 © ISO Properties, Inc., 2001




**Hiscox Insurance Company Inc.**

Policy Number: P100.082.979.4
Named Insured: Safe Rise
Endorsement Number: 10
Endorsement Effective: 02/03/2024

# RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **q.** of Paragraph **2. Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**B.** Exclusion **p.** of Paragraph **2. Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.



**Hiscox Insurance Company Inc.**

Policy Number: P100.082.979.4
Named Insured: Safe Rise
Endorsement Number: 11
Endorsement Effective: 02/03/2024

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – INTERCOMPANY PRODUCTS SUITS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to any claim for damages by any Named Insured against another Named Insured because of "bodily injury" or "property damage" arising out of "your products" and included within the "products-completed operations hazard."

**Hiscox Insurance Company Inc.**



Policy Number:    P100.082.979.4

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION –PRIVACY AND CYBER INCIDENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **2. Exclusions** under **Section I – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY, and COVERAGE C – MEDICAL PAYMENTS** is amended to include the following exclusion:

**Privacy and Cyber Incidents**

"Bodily injury", "property damage" or "personal and advertising injury" based upon or arising out of any actual or alleged:

(1) unauthorized acquisition, access, use, or disclosure of, improper collection or retention of, or failure to protect any non-public, personally identifiable information in the insured's care, custody or control;

(2) violation of any privacy law or consumer data protection law protecting against the use, collection, or disclosure of any information about a person or any confidential corporate information;

(3) denial of service or delay, disruption, impairment, failure, or outage of any part of a computer system or network, regardless of whether the insured controls or owns the computer system or network;

(4) unauthorized or unlawful access to any electronic data or any part of a computer system or network, including through the transmission of any malicious code, such as a computer virus, worm, logic bomb, malware, spyware, Trojan horse, or other fraudulent or unauthorized computer code, regardless of whether the insured controls or owns the computer system or network; or

(5) threat, hoax, or demand relating to subparts (1) through (4) above.

This exclusion will apply even if the claim alleges negligence or other wrongdoing in the:

(a) failure to prevent any cyber incident listed in subparts (1) through (4)of this exclusion or any resulting "property damage", "bodily injury", or "personal and advertising injury"; or

(b) failure to report any cyber incident listed in sub-parts (1) through (4) of this exclusion to the authorities.



**Hiscox Insurance Company Inc.**

Policy Number: P100.082.979.4
Named Insured: Safe Rise
Endorsement Number: 13
Endorsement Effective: 02/03/2024

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES – TRANSFER OF DUTIES WHEN A LIMIT OF INSURANCE IS USED UP

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following Condition is added to COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV):

**Transfer of Duties When a Limit of Insurance Is Used Up.**

**a.** If we conclude that, based on "occurrences," offenses, claims or "suits" which have been reported to us and to which this insurance may apply, the:

  **(1)** General Aggregate Limit (other than the Products/Completed Operations Aggregate Limit);

  **(2)** Products/Completed Operations Aggregate Limit;

  **(3)** Personal and Advertising Injury Limit;

  **(4)** Each Occurrence Limit; or

  **(5)** Fire Damage Limit

is likely to be used up in the payment of judgments or settlements, we will notify the first Named Insured, in writing, to that effect.

**b.** When a limit of insurance described in paragraph **a.** above has actually been used up in the payment of judgments or settlements:

  **(1)** We will notify the first Named Insured, in writing, as soon as practicable, that:

    **(a)** Such a limit has actually been used up; and

    **(b)** Our duty to defend "suits" seeking damages subject to that limit has also ended.

  **(2)** We will initiate, and cooperate in, the transfer of control, to any appropriate insured, of all claims and "suits" seeking damages which are subject to that limit and which are reported to us before that limit is used up. That insured must cooperate in the transfer of control of said claims and "suits".

We agree to take such steps, as we deem appropriate, to avoid a default in, or continue the defense of, such "suits" until such transfer is completed, provided the appropriate insured is cooperating in completing such transfer.

We will take no action whatsoever with respect to any claim or "suit" seeking damages that would have been subject to that limit, had it not been used up, if the claim or "suit" is reported to us after that limit of insurance has been used up.

  **(3)** The first Named Insured, and any other insured involved in a "suit" seeking damages subject to that limit, must arrange for the defense of such "suit" within such time period as agreed to between the appropriate insured and us. Absent any such agreement, arrangements for the defense of such "suit" must be made as soon as practicable.

**c.** The first Named Insured will reimburse us for expenses we incur in taking those steps we deem appropriate in accordance with paragraph **b.(2)** above.

The duty of the first Named Insured to reimburse us will begin on:

  **(1)** The date on which the applicable limit of insurance is used up, if we sent notice in accordance with paragraph **a.** above; or

  **(2)** The date on which we sent notice in accordance with paragraph **b.(1)** above, if we did not send notice in accordance with paragraph a. above.

**d.** The exhaustion of any limit of insurance by the payments of judgments or settlements, and the resulting end of our duty to defend, will not be affected by our failure to comply with any of the provisions of this Condition.

 Copyright, Insurance Services Office, Inc., 1991



**Hiscox Insurance Company Inc.**

Policy Number: P100.082.979.4
Named Insured: Safe Rise
Endorsement Number: 14
Endorsement Effective: 02/03/2024

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NEW YORK CHANGES – PREMIUM AUDIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Paragraph **b.** of the **Premium Audit** Condition **Section IV** is replaced by the following:

**PREMIUM AUDIT**

    **b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. An audit to determine the final premium due or to be refunded will be completed within 180 days after the expiration date of the policy. But the audit may be waived if the total annual premium attributable to the auditable exposure base is not reasonably expected to exceed $1500. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured.

**B.** Except as provided in Paragraph **A.** above, the **Examination Of Your Books And Records** Common Policy Condition continues to apply.





| | |
|---|---|
| Policy Number: | P100.082.979.4 |
| Named Insured: | Safe Rise |
| Endorsement Number: | 15 |
| Endorsement Effective: | 02/03/2024 |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES –
# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Paragraph **1. Insuring Agreement** of Section **I – Coverage A Bodily Injury And Property Damage Liability** is replaced by the following:

  **1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      **(1)** The amount we will pay for damages is limited as described in Section **III – Limits Of Insurance**; and

      **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

    **b.** This insurance applies to "bodily injury" and "property damage" only if:

      **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

      **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II – Who Is An Insured** and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

   **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

   **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

   **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**B.** Paragraph **1.a.** of Section **I – Coverage B Personal And Advertising Injury Liability** is replaced by the following:

  **1. Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

   **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

   **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** and **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**C.** The following is added as Paragraph **e.** to the **Duties In The Event Of Occurrence, Offense, Claim Or Suit** Condition (Paragraph **2.** of **Section IV – Commercial General Liability Conditions**):

  **2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   **e.** Notice given by or on behalf of the insured, or written notice by or on behalf of the injured person or any other claimant, to any agent of ours in New York State, with particulars sufficient to identify the insured, shall be considered to be notice to us.

**D.** Paragraph **3.** of **Section IV – Commercial General Liability** Conditions is replaced by the following:

  **3. Legal Action Against Us**

   **a.** Except as provided in Paragraph **b.,** no person or organization has a right under this Coverage Part:

   **(1)** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   **(2)** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

 © Insurance Services Office, Inc., 2008

**b.** With respect to "bodily injury" claims, if we deny coverage or do not admit liability because an insured or the injured person, someone acting for the injured person or other claimant fails to give us written notice as soon as practicable, then the injured person, someone acting for the injured person or other claimant may bring an action against us, provided the sole question is whether the denial of coverage or nonadmission of liability is based on the failure to provide timely notice.

However, the injured person, someone acting for the injured person or other claimant may not bring an action if within 60 days after we deny coverage or do not admit liability, we or an insured:

**(1)** Brings an action to declare the rights of the parties under the policy; and

**(2)** Names the injured person, someone acting for the injured person or other claimant as a party to the action.

**E.** The following provision is added and supersedes any provision to the contrary:

Failure to give notice to us as required under this Coverage Part shall not invalidate any claim made by the insured, injured person or any other claimant, unless the failure to provide such timely notice has prejudiced us. However, no claim made by the insured, injured person or other claimant will be invalidated if it shall be shown not to have been reasonably possible to give such timely notice and that notice was given as soon as was reasonably possible thereafter.

**F.** The definition of "loading or unloading" in the **Definitions** Section does not apply.



**Hiscox Insurance Company Inc.**

Policy Number: P100.082.979.4
Named Insured: Safe Rise
Endorsement Number: 16
Endorsement Effective: 02/03/2024

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Paragraphs **1., 2., 3.** and **5.** of the **Cancellation** Common Policy Condition are replaced by the following:

**1.** The first Named Insured shown in the Declarations may cancel this entire policy by mailing or delivering to us advance written notice of cancellation.

**2. Cancellation Of Policies In Effect**

**a. 60 Days Or Less**

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**(1)** 30 days before the effective date of cancellation if we cancel for any reason not included in Paragraph **A.2.a.(2)** below.

**(2)** 15 days before the effective date of cancellation if we cancel for any of the following reasons:

**(a)** Nonpayment of premium, provided however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due;

**(b)** Conviction of a crime arising out of acts increasing the hazard insured against;

**(c)** Discovery of fraud or material misrepresentation in the obtaining of the policy or in the presentation of a claim;

**(d)** After issuance of the policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and that occurred subsequent to inception of the current policy period;

**(e)** Material physical change in the property insured, occurring after issuance or last annual renewal anniversary date of the policy, that results in the property becoming uninsurable in accordance with our objective, uniformly applied underwriting standards in effect at the time the policy was issued or last renewed; or material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of the policy, that causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed;

**(f)** Required pursuant to a determination by the Superintendent that continuation of our present premium volume would jeopardize our solvency or be hazardous to the interest of our policyholders, our creditors or the public;

**(g)** A determination by the Superintendent that the continuation of the policy would violate, or would place us in violation of, any provision of the Insurance Code; or

**(h)** Where we have reason to believe, in good faith and with sufficient cause, that there is a probable risk of danger that the insured will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds. If we cancel for this reason, you may make a written request to the Insurance Department, within 10 days of receipt of this notice, to review our cancellation decision. Also, we will simultaneously send a copy of this cancellation notice to the Insurance Department.

**b. For More Than 60 Days**

If this policy has been in effect for more than 60 days, or if this policy is a renewal or continuation of a policy we issued, we may cancel only for any of the reasons listed in Paragraph **A.2.a.(2)** above, provided:

**(1)** We mail the first Named Insured written notice at least 15 days before the effective date of cancellation; and

**(2)** If we cancel for nonpayment of premium, our notice of cancellation informs the first Named Insured of the amount due.

**3.** We will mail or deliver our notice, including the reason for cancellation, to the first Named Insured at the address shown in the policy and to the authorized agent or broker.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata.

However, when the premium is advanced under a premium finance agreement, the cancellation refund will be pro rata. Under such financed policies, we will be entitled to retain a minimum earned premium of 10% of the total policy premium or ███ whichever is greater. The cancellation will be effective even if we have not made or offered a refund.

**B.** The following is added to the **Cancellation** Common Policy Condition:

**7.** If one of the reasons for cancellation in Paragraph **A.2.a.(2)** or **D.2.b.(2)** exists, we may cancel this entire policy, even if the reason for cancellation pertains only to a new coverage or endorsement initially effective subsequent to the original issuance of this policy.

**C.** The following conditions are added:

**1. Nonrenewal**

If we decide not to renew this policy we will send notice as provided in Paragraph **C.3.** below.

**2. Conditional Renewal**

If we conditionally renew this policy subject to a:

**a.** Change of limits;

**b.** Change in type of coverage;

**c.** Reduction of coverage;

**d.** Increased deductible;

**e.** Addition of exclusion; or

**f.** Increased premiums in excess of 10%, exclusive of any premium increase due to and commensurate with insured value added or increased exposure units; or as a result of experience rating, loss rating, retrospective rating or audit;

we will send notice as provided in Paragraph **C.3.** below.

**3. Notices Of Nonrenewal And Conditional Renewal**

**a.** If we decide not to renew this policy or to conditionally renew this policy as provided in Paragraphs **C.1.** and **C.2.** above, we will mail or deliver written notice to the first Named Insured shown in the Declarations at least 60 but not more than 120 days before:

**(1)** The expiration date; or

**(2)** The anniversary date if this is a continuous policy.

**b.** Notice will be mailed or delivered to the first Named Insured at the address shown in the policy and to the authorized agent or broker. If notice is mailed, proof of mailing will be sufficient proof of notice.

© Insurance Services Office, Inc., 2008

c. Notice will include the specific reason(s) for nonrenewal or conditional renewal, including the amount of any premium increase for conditional renewal and description of any other changes.

d. If we violate any of the provisions of Paragraph **C.3.a.**, **b.** or **c.** above by sending the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice:

(1) Coverage will remain in effect at the same terms and conditions of this policy at the lower of the current rates or the prior period's rates until 60 days after such notice is mailed or delivered, unless the first Named Insured, during this 60 day period, has replaced the coverage or elects to cancel.

(2) On or after the expiration date of this policy, coverage will remain in effect at the same terms and conditions of this policy for another policy period, at the lower of the current rates or the prior period's rates, unless the first Named Insured, during this additional policy period, has replaced the coverage or elects to cancel.

e. If you elect to renew on the basis of a late conditional renewal notice, the terms, conditions and rates set forth in such notice shall apply:

(1) Upon expiration of the 60 day period; or

(2) Notwithstanding the provisions in Paragraphs **d.(1)** and **d.(2)**, as of the renewal date of the policy if we send the first Named Insured the conditional renewal notice at least 30 days prior to the expiration or anniversary date of the policy.

f. We will not send you notice of nonrenewal or conditional renewal if you, your authorized agent or broker or another insurer of yours mails or delivers notice that the policy has been replaced or is no longer desired.

D. The following provisions apply when the Commercial Property Coverage Part, the Farm Coverage Part or the Capital Assets Program (Output Policy) Coverage Part is made a part of this policy:

1. Items **D.2.** and **D.3.** apply if this policy meets the following conditions:

a. The policy is issued or issued for delivery in New York State covering property located in this state; and

b. The policy insures:

(1) For loss of or damage to structures, other than hotels or motels, used predominantly for residential purposes and consisting of no more than four dwelling units; or

(2) For loss of or damage to personal property other than farm personal property or business property; or

(3) Against damages arising from liability for loss of, damage to or injury to persons or property, except liability arising from business or farming; and

c. The portion of the annual premium attributable to the property and contingencies described in **1.b.** exceeds the portion applicable to other property and contingencies.

2. Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

2. **Procedure And Reasons For Cancellation**

a. We may cancel this entire policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

(1) 15 days before the effective date of cancellation if we cancel for nonpayment of premium, provided however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

b. But if this policy:

(1) Has been in effect for more than 60 days; or

(2) Is a renewal of a policy we issued:

we may cancel this policy only for one or more of the following reasons:

(1) Nonpayment of premium, provided however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due;

(2) Conviction of a crime arising out of acts increasing the risk of loss;

(3) Discovery of fraud or material misrepresentation in obtaining the policy or in making a claim;

**(4)** Discovery of willful or reckless acts or omissions increasing the risk of loss;

**(5)** Physical changes in the covered property that make that property uninsurable in accordance with our objective and uniformly applied underwriting standards in effect when we:

  **(a)** Issued the policy; or

  **(b)** Last voluntarily renewed the policy;

**(6)** The Superintendent of Insurance's determination that continuing the policy would violate Chapter 28 of the Insurance Law; or

**(7)** Required pursuant to a determination by the Superintendent of Insurance that the continuation of our present premium volume would be hazardous to the interests of our policyholders, our creditors or the public.

**3.** The following are added:

  **a. Conditional Continuation**

  Instead of cancelling this policy, we may continue it on the condition that:

  **(1)** The policy limits be changed; or

  **(2)** Any coverage not required by law be eliminated.

  If this policy is conditionally continued, we will mail or deliver to the first Named Insured written notice at least 20 days before the effective date of the change or elimination. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

  **b. Nonrenewal**

  If, as allowed by the laws of New York State, we:

  **(1)** Do not renew this policy; or

  **(2)** Condition policy renewal upon:

    **(a)** Change of limits; or

    **(b)** Elimination of coverage;

  we will mail or deliver written notice of nonrenewal or conditional renewal:

    **(a)** At least 45 days; but

    **(b)** Not more than 60 days;

  before the expiration date of the policy. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

**E.** The following is added to the Farm Property – Other Farm Provisions Form – Additional Coverages, Conditions, Definitions, the Commercial Property Coverage Part and the Capital Assets Program (Output Policy) Coverage Part:

When the property is subject to the Anti-Arson Application in accordance with New York Insurance Department Regulation No. 96, the following provisions are added:

If you fail to return the completed, signed and affirmed anti-arson application to us:

**1.** Or our broker or agent within 45 days of the effective date of a new policy, we will cancel the entire policy by giving 20 days' written notice to you and to the mortgageholder shown in the Declarations.

**2.** Before the expiration date of any policy, we will cancel the policy by giving written notice to you and to the mortgageholder shown in the Declarations at least 15 days before the effective date of cancellation.

The cancellation provisions set forth in **E.1.** and **E.2.** above supersede any contrary provisions in this policy including this endorsement.

If the notice in **E.1.** or **E.2.** above is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

**F.** The following applies to the Commercial Property Coverage Part, the Farm Coverage Part and the Capital Assets Program (Output Policy) Coverage Part:

Paragraphs **f.** and **g.** of the **Mortgageholders** Condition are replaced by the following:

  **f. Cancellation**

  **(1)** If we cancel this policy, we will give written notice to the mortgageholder at least:

    **(a)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    **(b)** 30 days before the effective date of cancellation if we cancel for any other reason.

**(2)** If you cancel this policy, we will give written notice to the mortgageholder. With respect to the mortgageholder's interest only, cancellation will become effective on the later of:

**(a)** The effective date of cancellation of the insured's coverage; or

**(b)** 10 days after we give notice to the mortgageholder.

**g. Nonrenewal**

**(1)** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**(2)** If you elect not to renew this policy, we will give written notice to the mortgageholder. With respect to the mortgageholder's interest only, nonrenewal will become effective on the later of:

**(a)** The expiration date of the policy; or

**(b)** 10 days after we give notice to the mortgageholder.

**G.** The following provisions apply when the following are made a part of this policy:

Commercial General Liability Coverage Part

Employment-Related Practices Liability Coverage Part

Farm Liability Coverage Form

Liquor Liability Coverage Part

Products/Completed Operations Liability Coverage Part

**1.** The aggregate limits of this policy as shown in the Declarations will be increased in proportion to any policy extension provided in accordance with Paragraph **C.3.d.** above.

**2.** The last sentence of Limits Of Insurance does not apply when the policy period is extended because we sent the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice.



**Hiscox Insurance Company Inc.**

Policy Number: P100.082.979.4
Named Insured: Safe Rise
Endorsement Number: 17
Endorsement Effective: 02/03/2024

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – DAMAGE TO PRIMARY RESIDENCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

With respect to a premises that is an insured's primary residence:

**A.** The last paragraph ("Exclusions **c.** through **n.** do not apply . . . ") of Paragraph **2., Exclusions** under **Section I – Coverage A – Bodily Injury And Property Damage Liability** is deleted.

**B.** The first exception ("Paragraphs **(1), (3)** and **(4)** of this exclusion do not apply . . . ") to Exclusion **j., Damage To Property** of Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is deleted.

**C.** Paragraph **6.** of **Section III – Limits Of Insurance** is deleted.

**D.** Any reference in the Declarations to "Damage To Premises Rented To You" is deleted.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.



**Hiscox Insurance Company Inc.**

Policy Number:       P100.082.979.4
Named Insured:       Safe Rise
Endorsement Number:    18
Endorsement Effective:   02/03/2024

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**SCHEDULE**

<table>
<tr><td colspan="1"><strong>SCHEDULE – PART I</strong></td></tr>
<tr><td><strong>Terrorism Premium (Certified Acts) $</strong>▮▮▮▮▮<br><br><strong>This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(ies):</strong><br><br><br><br><br><br><br><strong>Additional information, if any, concerning the terrorism premium:</strong><br><br></td></tr>
<tr><td><strong>SCHEDULE – PART II</strong><br><br><strong>Federal share of terrorism losses   __80__%</strong><br>(Refer to Paragraph B. of this endorsement.)<br><br></td></tr>
<tr><td>Information required to complete this Schedule, if not shown above, will be shown in the Declarations.</td></tr>
</table>



**Hiscox Insurance Company Inc.**

Policy Number: P100.082.979.4
Named Insured: Safe Rise
Endorsement Number: 18
Endorsement Effective: 02/03/2024

## THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part **II** of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.



**Hiscox Insurance Company Inc.**

Policy Number: P100.082.979.4
Named Insured: Safe Rise
Endorsement Number: 19
Endorsement Effective: 02/03/2024

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.



**Hiscox Insurance Company Inc.**

Policy Number:          P100.082.979.4
Named Insured:          Safe Rise
Endorsement Number:     20
Endorsement Effective:  02/03/2024

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COMMUNICABLE DISEASE EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Communicable Disease**

"Bodily injury" or "property damage" arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

**a.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

**b.** Testing for a communicable disease;

**c.** Failure to prevent the spread of the disease; or

**d.** Failure to report the disease to authorities.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Communicable Disease**

"Personal and advertising injury" arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

**a.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

**b.** Testing for a communicable disease;

**c.** Failure to prevent the spread of the disease; or

**d.** Failure to report the disease to authorities.

**Hiscox Insurance Company Inc.**



Policy Number: P100.082.979.4
Named Insured: Safe Rise
Endorsement Number: 21
Endorsement Effective: 02/03/2024

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# AMENDED WAR EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Paragraph **2. Exclusions** under **Section I – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, the exclusion of "War" is deleted in its entirety and replaced with the following:

**i. War, Civil War, Cyberwarfare, and NCBR**

"Bodily injury" or "property damage" based upon or arising out of, directly or indirectly occasioned by, happening through or in consequence of:

**1.** war, invasion, acts of foreign enemies, hostilities (whether war is declared or not), civil war, rebellion, revolution, insurrection, military, or usurped power;

**2.** confiscation, nationalization, requisition, destruction of, or damage to property by or under the order of any government, public, or local authority;

**3.** "cyberwarfare", to the extent not otherwise excluded by paragraph 1; or

**4.** any "NCBR malicious act".

This will not apply to damage by fire to premises while rented to you or temporarily occupied by you with the owner's permission. Any payments we make for "property damage" to such premises will be subject to the Damage to Premises Limit.

**B.** Paragraph **2. Exclusions** under **Section I – COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**, the exclusion of "War" is deleted in its entirety and replaced with the following:

**o. War, Civil War, Cyberwarfare, and NCBR**

"Personal and advertising injury", based upon or arising out of, directly or indirectly occasioned by, happening through or in consequence of

**1.** war, invasion, acts of foreign enemies, hostilities (whether war is declared or not), civil war, rebellion, revolution, insurrection, military, or usurped power;

**2.** confiscation, nationalization, requisition, destruction of, or damage to property by or under the order of any government, public, or local authority;

**3.** "cyberwarfare", to the extent not otherwise excluded by paragraph 1; or

**4.** any "NCBR malicious act".

**C.** In **Section V – DEFINITIONS**, the following definitions are added for purposes of this endorsement:

**1.** "Cyberwarfare" means any:

**a.** unauthorized access to, or use, alteration, corruption, damage, manipulation, misappropriation, theft, deletion, or destruction of, any computer hardware or electronic data;

**b.** creation, transmission, or introduction into a computer system, computer network, or electronic data of a computer virus or harmful code; or

**c.** restriction or inhibition of access to a computer system, computer network, or electronic data, including through a denial-of-service (DoS) attack,

committed by, or on behalf of, a "state".

In determining by whom any action listed in parts a. through c. above is committed we will consider to whom any governing body (including the governing body's intelligence, law enforcement, or military services) attributes such action, regardless of whether:

**i.** the computer system, computer network, or electronic data is physically located within the jurisdiction of that governing body; or

Includes copyrighted material of Insurance Services Office, Inc.,
with its permission.

**ii.** there are inconsistent statements within different branches or agencies of that governing body (including intelligence, law enforcement, or military services) as to whom the action is attributable to.

However, if:

**A.** a governing body has not attributed any such action to a "state", or any person, group, association, or entity acting on the "state's", behalf; and

**B.** there is at least one "media report" or a cybersecurity forensic film report indicating that such action is attributed to a "state" or any person, group, association, or entity acting on the "state's" behalf,

then we will not pay any damages for "bodily injury", "property damage", or "personal and advertising injury" resulting from any actions listed in parts a. through c. above until any governing body attributes such action to a "state" or any person, group, association, or entity acting on the "state's" behalf.

If a governing body does not attribute such action to a "state" or any person, group, association, or entity acting on the "state's" behalf, or declares it is unable to do so, then a "media report" or cybersecurity forensic firm report will be conclusive evidence that the act was committed by, or on behalf of, a "state".

For purposes of this definition, "media report" means an article published by the Associated Press, Reuters, Wall Street Journal, or the British Broadcasting Corporation.

For purposes of this definition, "state" means a sovereign state, state-like entity, quasi-state, proto-state, or a state sponsored actor or group.

**2.** "NCBR malicious act" means an act or series of acts that harms another person or damages property through the physical release or dispersal of "nuclear, chemical, biological, or radiological agents or materials", which is carried out by any person or group of persons, whether acting alone, on behalf of, or in connection with any organization.

**3.** "Nuclear, chemical, biological, or radiological agents or materials" means:

**a.** nuclear reaction, nuclear radiation or radioactive particles, whether released or dispersed by nuclear or conventional devices;

**b.** any chemical compound; or

**c.** any pathogen,

in sufficient concentration to cause harm to people or damage to property.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.



# Notices



**Policyholder Notice
Electronic Delivery**

If you received your insurance policy by email, it is because you have chosen electronic delivery of your policy documents and important notices, including cancellation and nonrenewal notices where permitted by law.  We also will send any renewal policy documents to you by email at the address you have provided.

If you are currently receiving paper documents and would like to have ease of retrieval and access and save on storage space, you will need to contact us and update your preferences.  Most documents can be sent electronically within minutes.  For electronic documents, you will need a computer or mobile device with Internet access and the ability to receive external emails.  You also will need software such as Adobe Reader® that allows you to view and save PDF documents, and a printer to create paper copies.

At any time you may request a paper copy of your policy, or you may withdraw your consent to receive documents by email.  We will then send documents to you by US mail at no added cost.

You must notify us if your email or street address changes.  To update your email or street address, or to request paper documents, please contact us at 888-202-3007.



**Hiscox Insurance Company Inc.**

## ECONOMIC AND TRADE SANCTIONS POLICYHOLDER NOTICE

Hiscox is committed to complying with the U.S. Department of Treasury Office of Foreign Assets Control (OFAC) requirements. OFAC administers and enforces economic sanctions policy based on Presidential declarations of national emergency. OFAC has identified and listed numerous foreign agents, front organizations, terrorists, and narcotics traffickers as Specially Designated Nationals (SDN's) and Blocked Persons. OFAC has also identified Sanctioned Countries. A list of Specially Designated Nationals, Blocked Persons and Sanctioned Countries may be found on the United States Treasury's web site http://www.treas.gov/offices/enforcement/ofac/.

Economic sanctions prohibit all United States citizens (including corporations and other entities) and permanent resident aliens from engaging in transactions with Specially Designated Nationals, Blocked Persons and Sanctioned Countries. Hiscox may not accept premium from or issue a policy to insure property of or make a claim payment to a Specially Designated National or Blocked Person. Hiscox may not engage in business transactions with a Sanctioned Country.

A Specially Designated National or Blocked Person is any person who is determined as such by the Secretary of Treasury.

A Sanctioned Country is any country that is the subject of trade or economic embargoes imposed by the laws or regulations of the United States.

In accordance with laws and regulations of the United States concerning economic and trade embargoes, this policy may be rendered void from its inception with respect to any term or condition of this policy that violates any laws or regulations of the United States concerning economic and trade embargoes including, but not limited to the following:

(1) Any insured under this Policy, or any person or entity claiming the benefits of such insured, who is or becomes a Specially Designated National or Blocked Person or who is otherwise subject to US economic trade sanctions;

(2) Any claim or suit that is brought in a Sanctioned Country or by a Sanctioned Country government, where any action in connection with such claim or suit is prohibited by US economic or trade sanctions;

(3) Any claim or suit that is brought by any Specially Designated National or Blocked Person or any person or entity who is otherwise subject to US economic or trade sanctions;

(4) Property that is located in a Sanctioned Country or that is owned by, rented to or in the care, custody or control of a Sanctioned Country government, where any activities related to such property are prohibited by US economic or trade sanctions; or

(5) Property that is owned by, rented to or in the care, custody or control of a Specially Designated National or Blocked Person, or any person or entity who is otherwise subject to US economic or trade sanctions.

Please read your Policy carefully and discuss with your broker/agent or insurance professional. You may also visit the US Treasury's website at http://www.treas.gov/offices/enforcement/ofac/.